IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION


UNITED STATES OF AMERICA          *   Docket No. 2:15-CR-00012
                                  *
                                  *
VERSUS                            *   February 1, 2016
                                  *
                                  *
ADLEY LEO DYSON, JR.              *   Lake Charles, Louisiana

*************************************************************

REPORTER'S OFFICIAL TRANSCRIPT OF JURY VOIR DIRE
BEFORE THE HONORABLE PATRICIA MINALDI,
UNITED STATES DISTRICT JUDGE

*************************************************************

**A P P E A R A N C E S**


FOR THE GOVERNMENT: JOHN LUKE WALKER
                    U.S. Attorney's Office
                    800 Lafayette Street, Suite 2200
                    Lafayette, Louisiana 70501
                    Email:  john.walker2@usdoj.gov
                    Phone:  (337) 262-6618
                    Fax:    (337) 262-6682


                    ROBERT F. MOORE
                    U.S. Attorney's Office
                    800 Lafayette Street, Suite 2200
                    Lafayette, LA  70501
                    Email:  robert.moore@usdoj.gov
                    Phone:  (337) 262-6618
                    Fax:    (337) 262-6682


FOR THE DEFENDANT:  CRISTIE GAUTREAUX GIBBENS
                    Federal Public Defender's Office
                    102 Versailles Boulevard, Suite 816
                    Lafayette, Louisiana  70501
                    Email:   cristie_gibbens@fd.org
                    Phone:  (337) 262-6336
                    Fax:    (337) 262-6605


**Deidre D. Juranka, RPR**
**United States Court Reporter**
**Western District of Louisiana**

```
                              JOSEPH ROUSSEL STREVA, JR.
                              Federal Public Defender's Office
                              102 Versailles Blvd., Suite 816
                              Lafayette, Louisiana  70501
                              Email:  joseph_streva@fd.org
                              Phone:  (337) 262-6336
                              Fax:    (337) 262-6605


      REPORTED BY:            DEIDRE D. JURANKA, RPR
                              611 Broad Street, Suite 267
                              Lake Charles, Louisiana 70601
                              Email:  dd_juranka@lawd.uscourts.gov
                              Phone:  (337) 214-6669
                              Fax:    (337) 437-3390
```

# I N D E X

PAGE

COURT PROCEEDINGS ............................. 4

IN-CAMERA PROCEEDINGS.......................... 38

COURT PROCEEDINGS ............................. 42

IN-CAMERA PROCEEDINGS.......................... 49

COURT PROCEEDINGS ............................. 50

IN-CAMERA PROCEEDINGS.......................... 61

COURT PROCEEDINGS ............................. 63

```
 1                    COURT PROCEEDINGS
 2              (Call to order of the court.)
 3        THE COURT:  Good morning.  You may be seated.  I'm
 4   going to ask you to stand up in another couple minutes,
 5   but sorry.  Way it works.  Hi.  Welcome.  My name is
 6   Patricia Minaldi and I have the great good fortune to
 7   preside over this division of your United States
 8   District Court.  And I know some people are probably not
 9   happy to be here this morning, but I thank you for
10   coming and being willing to listen.  We'll try to make
11   it as -- you can't find a seat?
12              (Off the record discussion.)
13        THE COURT:  We're going to try to make this as
14   comfortable as possible for you.  I know many of you are
15   probably not happy to be here; but it's part of the
16   process and we need to do this so that each of these
17   parties can have their day in court, which is very
18   important and I'm sure you would want that if you were
19   in their position.  So what we're going to do in the
20   next few minutes is -- several minutes, is to call 18
21   people up into this jury box and we're going to ask you
22   some questions to see if you can be a fair and impartial
23   juror in this case.  I will ask you some questions and
24   then the attorneys will have an opportunity, short, to
25   ask you some questions, too.  And just ask you to be as
```

```
1     honest as you can be and try to base anything that
2     happens in here on the evidence and the facts that you
3     hear during this trial and on nothing else.  So, with
4     that, I'm going to ask all of you to raise your right
5     hand -- stand up and raise your right hand.
6                   (Oath is administered.)
7          THE COURT:  Ms. Benoit is going to call 18 people
8     into the box and she'll tell you where to sit.
9          COURTROOM DEPUTY:  ███████████████████████████
10    █████████████████████████████████████████████████
11    ████████████████████████████████████████████████
12    ███████████████████████████████████████████████
13    ███████████████████████████████████████.
14         THE COURT:  Where do you live anyway, L███ or
15    L█████?
16         MR. L█████:  █████████.
17         COURTROOM DEPUTY:  ████████████████████████
18    █████████████████████████████████████████████████
19    ████████.
20         THE COURT:  Mr. G███████ is that how you --
21    Ms. G███████, is that how you pronounce your last name?
22         MS. G███████:  Yes, ma'am.
23         THE COURT:  Okay.  I want everyone to try to relax.
24    It's a weird deal coming to this building, being seated
25    in these seats; but we try to make everybody
```

1    comfortable.  So please take it seriously, but don't get

2    all nervous.

3         All right.  Y'all have filled out questionnaires

4    which makes the process go a little faster because we

5    don't have to ask your name, how old you are, how many

6    children you have.  We have that all down on paper.  Has

7    everyone had an opportunity to look at the

8    questionnaires?

9         MR. WALKER:  We just got them so I don't think

10   either the Prosecution or Defense has had time to look

11   at them.  That's what we're talking about now.

12        THE COURT:  That didn't quite work out, did it.

13   Anyway, I'm going to ask you some questions.  That will

14   give them time to look at the questionnaires.

15        And, Ms. W██████, you have the great good fortune

16   of being juror number one so you get to have the

17   microphone and you get to be Sally Jessy Raphael.  And

18   probably no one even knows who she is anymore, but pass

19   the microphone around.  I'm sure all of your fellow

20   jurors will help you, because we need to make sure that

21   everyone -- might not be trying to do -- everyone talks

22   into a microphone so that it goes onto the recording.

23   Okay.

24        All right.  This is a criminal case that we're

25   hearing this week.  I do not believe it will last more

1    than a few days.  So you don't have to worry about being

2    put up in a motel room and away from your families.  Not

3    one of those kinds of cases.  So you'll be able to go

4    about your normal business.

5         We basically start at 9:00 o'clock in the morning,

6    try to break around 12:00 for an hour and a half so you

7    can have a nice lunch, relax, till about 1:30, these are

8    general, and work till 5:00.  If we need to go a little

9    bit late or finish a little bit early based on how the

10   witnesses are playing out, we'll do that.  But it will

11   all make sense to you.

12        You know, I'm hoping that y'all will be

13   comfortable.  If you need a break at any point, I

14   usually try to take breaks because, like I said last

15   week, I've had two nine and a half pound babies.  I need

16   to take breaks, but other people need to take breaks;

17   and if we're not taking one when you need one, raise

18   your hand, get my attention and we'll take a break.

19   We'll have coffee right in that room right there which

20   is the jury deliberation room, and you can use that room

21   at your convenience for your convenience.

22        As I said, this is a criminal case.  And I've said

23   this many times before and almost everyone here has

24   heard it, but I go over these terms which I think you've

25   all probably heard before because I have a godson who

1   was asked when he was in the fifth grade what the

2   definition of a marathon was and he said that's when *Law*

3   *and Order* is on all day long.  You know, I'm sure you've

4   heard all these things before.

5         But in a criminal case the Government, who is

6   represented by these young men over here, and they'll

7   introduce themselves in a minute, the Government has the

8   burden of proving their case beyond a reasonable doubt.

9   Civil cases it's a preponderance of the evidence, which

10   is not very -- not a heavy burden.  Criminal cases,

11   beyond a reasonable doubt is really a heavy burden.

12   It's not beyond all doubt or a shadow of a doubt but a

13   doubt that you can put a reason to, common sense,

14   understanding.  So that's what their burden is.

15         The defendant who is charged with the crime doesn't

16   have any burden whatsoever, doesn't need to take the

17   stand if he doesn't want to, doesn't need to

18   cross-examine a witness, doesn't need to make an opening

19   statement, doesn't need to make a closing argument.  The

20   defendant has no burden whosoever.  It's the

21   Government's burden beyond a reasonable doubt.  So

22   that's what we're going to see here today.

23         This is not -- I think I'm fair in saying this is

24   not a violent crime.  So you won't be seeing, as we

25   often do, bloody photographs or anything like that.

**Deidre D. Juranka, RPR**
**United States Court Reporter**
**Western District of Louisiana**

1     It's going to be very important but not violent.  So I
2     don't want you to think about that.
3          And if you would take that microphone, please,
4     Ms. W████, and pass it to the young man sitting to
5     your left.
6          "████," Mr. D███ --
7          MR. DORRE:  Yes, ma'am.
8          THE COURT:  -- is that how we pronounce your last
9     name?  Okay.  You have made it fairly clear on your
10    questionnaire that you don't think that you can sit in
11    judgment of another person.  Is that correct?
12         MR. D███:  Yes, ma'am.
13         THE COURT:  Well, I don't think I have the right to
14    sit in judgment of another person; but that's the job
15    they gave me.
16         MR. D███:  I completely understand.  I'm sorry.
17    I'm a little bit nervous with crowds.
18         THE COURT:  I understand.  Me, too.  But sometimes
19    society calls on each and every one of us to stand up
20    and take a part in the process.  And if you are
21    thoroughly convinced that you cannot take part in the
22    process, I understand that; but I'm asking you to reach
23    down deep inside and see if you can actually be a juror
24    and do your civic duty like these other people are
25    doing.  Can you do that?

1        MR. D███: I'll try my best, ma'am.

2        THE COURT: You think you can do that?

3        MR. D███: I can try. The only problem of it is

4 that I don't have no -- I need somebody to drive me over

5 here. My dad drove me over here today. I am dyslexic

6 so it makes it hard for me to drive back and forth to

7 work. So that's why I work with my dad. So the only

8 thing of it is, if you can get somebody to drive me over

9 here, I'll try my best.

10       THE COURT: Your dad can't do that?

11       MR. D███: My dad has to go to work. He took off

12 especially today so I can go over here, but I don't have

13 no other way of driving back and forth here.

14       THE COURT: Thanks for letting me know that. If

15 you can pass the microphone down two seats to

16 Mr. B███.

17       MR. B███: Good morning.

18       THE COURT: Hi. Mr. B███, there's a well-known

19 family of lawyers here in Lake Charles with the last

20 name B███. Do you have any relationship with them?

21       MR. B███: I'm related somewhat, but I'm not

22 acquainted with any of those.

23       THE COURT: Okay. Big LSU football people.

24       MR. B███: Me, too.

25       THE COURT: As you can see, me, too.

```
 1            MR. B████:  I didn't wear my cap because of you.
 2            THE COURT:  All right.  You've been on a grand jury
 3       before.
 4            MR. B████:  Yes, ma'am.
 5            THE COURT:  Tell me about that.
 6            MR. B████:  It's 15, 20 years ago, Beauregard
 7       Parish, went on grand jury for 12 months.  We really
 8       didn't try but one case.  We indicted a guy to move
 9       forward in an attempted murder, rape case.
10            THE COURT:  Okay.  And I'm sure you are well aware
11       of the fact that a grand jury listens to mostly the
12       State's case and really doesn't hear much from the
13       Defense and decides whether there's enough evidence to
14       hold the case over for trial.  It's not beyond a
15       reasonable doubt or anything like that.  It's whether
16       there's enough evidence to hold the case over for trial.
17       Am I right about that?
18            MR. B████:  Yes, ma'am.
19            THE COURT:  And you know that if you were selected
20       to be on this jury it would be a much different burden
21       of proof?
22            MR. B████:  I've been on petit jury before, too.
23            THE COURT:  I saw that.
24            MR. B████:  Yes, ma'am.
25            THE COURT:  So tell us about that.
```

1          MR. B▓▓▓▓:  It was a case -- a break-in and

2     robbery case in Beauregard Parish, and I was the 13th

3     juror.

4          THE COURT:  You were the alternate?

5          MR. B▓▓▓▓:  I was the alternate, yes, ma'am.

6          THE COURT:  Did you actually get to deliberate?

7          MR. B▓▓▓▓:  I did everything but go behind

8     chambers.

9          THE COURT:  And apparently they did not convict the

10    person of that crime.

11         MR. B▓▓▓▓:  No, ma'am.  It was kind of late.

12    They drug it out, and some of the deputies' testimonies

13    didn't match, and he had a good lawyer.

14         THE COURT:  That helps.

15         MR. B▓▓▓▓:  Yes, ma'am.

16         THE COURT:  Would your experience in that case have

17    any bearing on how you view this case?  Totally

18    different, totally different people.  Could be the same

19    problems, but maybe not.  How would you feel about that?

20         MR. B▓▓▓:  I would see no bearing.  I'm a very

21    patriotic person and proud to be here to do my duty.

22         THE COURT:  Thank you.  Me, too.  Let's see.  If

23    you can pass right next-door to Ms. H▓▓▓.  Is that

24    right?

25         MS. H▓▓▓:  Yes, ma'am.

1        THE COURT:  Ms. H████, you have been involved in a

2  lawsuit or had a family member involved in a lawsuit

3  before.

4        MS. H████:  Just family members.  My sister was in

5  a car accident one time, and my father is an attorney

6  here in town.

7        THE COURT:  And what is his name?

8        MS. H████:  ████████████████.

9        THE COURT:  That's your maiden name?

10        MS. H████:  Yes.

11        THE COURT:  All right.  And did your sister's case

12  actually go to trial or did it settle?

13        MS. H████:  I believe it settled.

14        THE COURT:  Anything about that experience that

15  would cause you any difficulty being a juror in this

16  case?

17        MS. H████:  No.

18        THE COURT:  Thank you.  If you could pass right

19  next-door to Ms. T████.

20        Ms. T████, you have lots of writing on your

21  questionnaire.

22        MS. T████:  Yes, ma'am.

23        THE COURT:  Not going to be able to get to all of

24  it, but you were on a grand jury before.

25        MS. T████:  Yes, ma'am.

1       THE COURT:  Tell us a little bit about that,

2   please.

3       MS. T█████:  It was a murder case in Leesville.

4       THE COURT:  Okay.  And --

5       MS. T█████:  I don't know.  They found -- he went

6   to trial and they were found guilty.

7       THE COURT:  And along with my discussion with the

8   other juror, you realize that the burden of proof here

9   is a whole lot more burdensome than at the grand jury?

10      MS. T█████:  Yes, ma'am.

11      THE COURT:  And would you have any trouble abiding

12  by that?

13      MS. T█████:  No, ma'am.

14      THE COURT:  Okay.  And you've also been involved in

15  a lawsuit before.

16      MS. T█████:  Yes, ma'am.

17      THE COURT:  Tell me a little about that, please.

18      MS. T█████:  It happened when I was 20, and it

19  happened the day I was taken --

20      THE COURT:  So yesterday?

21      MS. T█████:  Oh, no.  I wish.  But it was the day I

22  was taken off of my father's insurance so I had to sue

23  to get my medical bills paid, and that's all I asked

24  for.

25      THE COURT:  Did you end up going to court over

1    that?

2         MS. T███████:  No, ma'am.

3         THE COURT:  And you have some family members who

4    had experiences with law enforcement?

5         MS. T███████:  Yes, ma'am.

6         THE COURT:  And I don't need to go into detail

7    about that, but is there anything about that that would

8    cause you a problem being a juror in this case?

9         MS. T███████:  No, ma'am, because everybody's

10   different.

11        THE COURT:  Okay.  Thank you.

12        MS. T███████:  You're welcome.

13        THE COURT:  And if you could pass right next-door

14   to, Ms. B███████.

15        Ms. B███████, you've been on a jury before.

16        MS. B███████:  Yes.

17        THE COURT:  Can you tell me a little bit about

18   that.

19        MS. B███████:  It was a drug trafficking, I'm

20   nervous, case in --

21        THE COURT:  So am I.

22        MS. B███████:  -- in Jeff Davis Parish.

23        THE COURT:  All right.  And what kind of drug was

24   that?

25        MS. B███████:  Marijuana.

```
 1          THE COURT:  How long ago was that?
 2          MS. B████:  Years.  Long time.  I'm not sure when.
 3          THE COURT:  And was it a 12 person jury?
 4          MS. B████:  Yes.
 5          THE COURT:  And in state court, I guess.
 6          MS. B████:  (Nods head up and down.)
 7          THE COURT:  So 10 out of 12 of you had to agree.
 8          MS. B████:  Right.
 9          THE COURT:  Here in federal court 12 out of 12 of
10     you have to agree so it's a little bit different.  Did
11     you agree with the verdict that the jury reached?
12          MS. B████:  Yes.
13          THE COURT:  Anything about that experience that
14     would cause you any difficulty here today?
15          MS. B████:  No, ma'am.
16          THE COURT:  Thank you.  If you would pass -- I have
17     to do this in a certain order or I lose track of
18     people -- to Ms. G████ right here in the maroon shirt.
19     And if there wasn't something on your questionnaire that
20     caused me to go, "I'm not going to talk to you," I'm
21     sure you're really hurt by that but --
22          Oh, yes, Ms. G████.  All right.  You've been
23     involved in a lawsuit before.
24          MS. G████:  Yes.
25          THE COURT:  Tell us a little bit about that.
```

1        MS. G█████:  It was a personal injury at work.

2        THE COURT:  Okay.  And did that actually go to

3    trial?

4        MS. G█████:  No.

5        THE COURT:  Settled out of court?

6        MS. G█████:  Yes, ma'am.

7        THE COURT:  Anything about that experience that

8    would cause you any difficulty being involved in a case

9    like this?

10        MS. G█████:  No, ma'am.

11        THE COURT:  You have lots of children.

12        MS. G█████:  I do.

13        THE COURT:  Sometimes a blessing, sometimes a

14    curse.

15        MS. G█████:  Always a blessing, never a curse.

16        THE COURT:  Good.  And it looks to me like most of

17    them are grown.

18        MS. G█████:  Yes.

19        THE COURT:  So I'm assuming you won't have a

20    problem with daycare.

21        MS. G█████:  No.

22        THE COURT:  Good.  Thank you.  If you could pass

23    the microphone four doors down to Mr. L██████.

24        Sometimes I get ahead of myself.  Mr. L██████,

25    you've been involved in a lawsuit before.

```
 1              MR. L_____:  We actually have current litigation.
 2         THE COURT:  Okay.  It's ongoing right now?
 3              MR. L_____:  Yes, ma'am.
 4         THE COURT:  And where is that ongoing right now?
 5              MR. L_____:  It's here in Lake Charles.  We had
 6    someone that caught our house on fire, a plumber.
 7         THE COURT:  Is it at state court?
 8              MR. L_____:  I'm not exactly sure.
 9         THE COURT:  There's the new building on Pithon
10    Street.
11              MR. L_____:  It's not in proceedings yet.  This is
12    just on the front end.
13         COURTROOM DEPUTY:  I think he's in the wrong seat.
14         THE COURT:  What's wrong?
15         COURTROOM DEPUTY:  Mr. L_____, you should be
16    sitting in the next seat.  Are you Mr. G_____?  You
17    two need to switch.
18         THE COURT:  Thank you, Ms. Benoit, for keeping us
19    all straight.  Okay.  But I did get him right.
20         And when is your next court date?
21              MR. L_____:  No court date has been set.  We're
22    still -- I guess they're still getting information,
23    getting ready for the suit.
24         THE COURT:  So the discovery process.
25              MR. L_____:  Yes, ma'am.
```

1      THE COURT:  Who's your lawyer?

2      MR. L████:      ████████████.

3      THE COURT:  And who's the lawyer for the other

4  side?

5      MR. L██████:  I'm not exactly sure right off.

6      THE COURT:  Well, that's good.  All right.  Thank

7  you.  If you'll pass right down to Mr. B████████.  If

8  I don't get you right, let me know because I've been

9  corrected once already.

10      Mr. B████████, you have been involved in a

11  lawsuit as well; is that right?

12      MR. B████████:  Yes, ma'am.

13      THE COURT:  Tell us a little bit about that.

14      MR. B████████:  I was injured on the job.  We

15  settled out of court.

16      THE COURT:  All right.  So did you have any

17  proceedings in court at all?

18      MR. B████████:  No, ma'am.

19      THE COURT:  Anything about that experience that

20  would cause you a problem here today?

21      MR. B████████:  No, ma'am.

22      THE COURT:  Thank you.  If you'd pass on down to

23  Mr. C██████ right here on the front row.

24      Mr. C██████, you've had somebody in your family or

25  related to you who's been involved with law enforcement

```
1          before; is that right?
2                MR. C███████:  (Nods head up and down.)
3                THE COURT:  Anything about that experience that
4          would cause you any problem?  This is a criminal case.
5                MR. C███████:  Right.  No.
6                THE COURT:  And would it cause you any problem?
7                MR. C███████:  Not at all.
8                THE COURT:  Thank you.  If you'd pass right
9          next-door to Ms. G█████.
10               Ms. G█████, you've had somebody in your family
11         who's been involved with law enforcement before.  Would
12         that cause you any problem in this case?
13               MS. G█████:  No, ma'am, not at all.
14               THE COURT:  Thank you.  If you could pass right
15         next-door to Mr. H████████.  And I love your first name,
16         by the way.  E██████ Kitt was one of my favorites.
17               All right.  Let's see.  Mr. H████████, you've been
18         involved in a lawsuit before.
19               MR. H████████:  Yes, ma'am.
20               THE COURT:  Tell me a little bit about that.
21               MR. H████████:  Guy hit me coming down the road so
22         I had to sue him.
23               THE COURT:  Did you actually go to court?
24               MR. H████████:  We settled out.
25               THE COURT:  Anything about that experience that
```

1     would cause you any difficulty in this case?

2           MR. H██████: No, ma'am.

3           THE COURT: Thank you.  If you could pass right

4     next-door to Ms. G█████.

5           Ms. G██████, someone in your close family has

6     been involved with law enforcement before; is that

7     right?

8           MS. G██████: That's correct.

9           THE COURT: And that was a misdemeanor?

10          MS. G█████: Yes.

11          THE COURT: How long ago was that?

12          MS. G██████: Well, he has already gone through a

13    year probation and graduated from McNeese, so.

14          THE COURT: Good news?

15          MS. G█████: Good news.

16          THE COURT: Anything about that experience that

17    would cause you any difficulty in this case?

18          MS. G█████: No, ma'am, not whatsoever.

19          THE COURT: Thank you.  I'm going to ask the

20    attorneys involved in this case and their assistants and

21    clients to introduce themselves so that you can let me

22    know if you know anyone involved in this case.

23          MR. WALKER: How do y'all do?  My name is Luke

24    Walker.  I'm an assistant U.S. attorney.  This is Robert

25    Moore, also an assistant U.S. attorney.   This is Stephen

```
1      Ashford who works with the HUD OIG.
2           THE COURT:  What does that stand for?
3           MR. WALKER:  Go ahead.
4           MR. ASHFORD:  United States Department of Housing
5      and Urban Development/Office of the Inspector General.
6           THE COURT:  Thank you.  Defense.
7           MS. GIBBENS:  My name's Cristie Gibbens.  I'm an
8      attorney.  And my client is Mr. Adley Dyson, Jr.
9           THE COURT:  Mr. Dyson, please stand up.
10          MS. GIBBENS:  Seated with me at counsel table is an
11     attorney, Joseph Streva, from Lafayette, Louisiana and
12     an investigator, Patricia Cumbo, from Baton Rouge.
13     Ms. Cumbo will be with us for the selection of the jury
14     but will probably not be sitting at counsel table
15     throughout the trial.
16          THE COURT:  Thank you.  I want to let y'all know
17     that you have, I use this term a lot, the great good
18     fortune of being on a jury with some of the best
19     attorneys I've ever met in my entire life, both sides.
20     They get along.  They'll be pleasant.  They're
21     professional.  And you probably will -- I learn
22     something every time I sit before them so -- maybe you
23     won't, but I do.
24          Anyway, anyone know any of the attorneys or people
25     who have just introduced themselves?  If so, please
```

 1    raise your hand.  No hands are raised.

 2         Mr. Walker?  We like to call him Mr. Skywalker,

 3    actually, Luke Skywalker.

 4         MR. WALKER:  Luke Walker so it makes it even worse.

 5    And I'll tell you this up front, one, I tend to be kind

 6    of a low talker and kind of a fast talker.  So if I

 7    speak too fast and too low, please raise up your hands

 8    and I'll try to slow down.

 9         THE COURT:  I'll take care of that.

10         MR. WALKER:  Thank you, Judge.  I appreciate the

11    kind words you said from all of us, by the way.

12         The other thing is I've spoken to the Defense and I

13    think, probably, I'm going to be asking more questions

14    than anybody else and I would ask that you just not hold

15    it against me.

16         I need to talk, first of all, to Mr. D████.  So if

17    you could pass the microphone back to Mr. D████.

18         THE COURT:  See, everybody helps.

19         MR. WALKER:  I'm going to tell you, Mr. D████, that

20    I'm dyslexic and I couldn't read and write until I was

21    in third grade.  I went to a special school to learn how

22    to read and write.  And so I understand kind of where

23    you sit here today.  In this case there are going to be

24    a lot of documents and so there's going to be a lot of

25    reading to do.  I know it was almost impossible to me

1    until I went to the special school.  Does the fact that

2    you're going to have to be reading a lot of documents,

3    does that make it more difficult for you, being

4    dyslexic?

5         MR. D█████:  I can read for a little while, like

6    maybe about 10 minutes or so, before things start to go

7    backwards on me.  Like I said, it only gets worse when

8    I'm nervous.  That's why I had to have my dad drive me

9    down here, because I'm kind of nervous around crowds.  A

10   lot of this was very nervous for me.  But if I get to

11   know the people for about a month, it loosens up a

12   little bit; but I don't think I have that much time over

13   here for that.  But like I said, all I can say is I can

14   try my best with reading it and everything else.  I

15   might have to have some help or what have you with it.

16        MR. WALKER:  Thank you very much.  Let's see.  If

17   we could pass it down, too, to Mr. B█████.

18        MR. B█████:  How do you do, sir?

19        MR. WALKER:  How do you do?  I know that there's a

20   person you know who was arrested for DWI; and I don't

21   know the outcome of that arrest for DWI, if that person

22   was convicted or not.

23        MR. B█████:  Well, it was my son.  It was, like,

24   20 years ago when he was right out of high school.  And

25   I had to go at 1:00 o'clock in the morning and get a

1    bondsman to get him out of Vernon Parish Jail, and that

2    was his only time.  He learned a good lesson.  We didn't

3    talk a lot that night on the way home, and that's the

4    only time I've ever had that kind of encounter.

5         MR. WALKER:  Did you feel like that the police and

6    the process kind of went the way it was supposed to or

7    were you unhappy?

8         MR. B████:  No, I was very happy with it.  And

9    his -- he was able to do probation.  And, actually, what

10   he done was he did this community service at the state

11   police headquarters in Leesville.  And they brought him

12   lunch every day from the jail.  They treated him like a

13   king.  He was weedeating, mowing, whatever.  And that

14   part I thought -- was very impressed with.  So the

15   process went well.

16        THE COURT:  Mr. B████, I think I heard you

17   correctly but I want to make it clear.  You said you

18   were happy with the process or unhappy?

19        MR. B████:  Yes, ma'am, very pleased with the way

20   it went, the way he was treated.

21        MR. WALKER:  If you could pass it one down.  I

22   believe it is Ms. H███.

23        MS. H███:  Yes.

24        MR. WALKER:  I saw your dad was a lawyer.

25        MS. H███:  Yes.

```
1          MR. WALKER:  What kind of lawyer is he?  What type
2    of cases does he do?
3          MS. H████:  More civil cases.
4          MR. WALKER:  Does he do any criminal cases?
5          MS. H████:  No.
6          MR. WALKER:  Do y'all talk about his cases and
7    stuff like that?
8          MS. H████:  Maybe on occasion, but not really.
9          THE COURT:  ████████████████, Mr. Walker.
10          MR. WALKER:  I'm from Lafayette.  Doesn't help me a
11    bit.
12          THE COURT:  I know.
13          MR. WALKER:  Let's see.  Mr. L█████, this is going
14    to be an odd question.  I'm not -- I'm asking it in kind
15    of an odd way, but I heard you say somebody accidentally
16    set your house on fire.  Did I hear it that way?  That's
17    what the civil suit was about?  Or it caught on fire?
18          MR. L█████:  A plumber was working on my house and
19    he caught the house on fire doing some work sweating a
20    pipe.
21          MR. WALKER:  Oh, okay.  Mr. B███████, who's
22    right next to you.  Did I pronounce your last name
23    correctly?
24          MR. B████████:  Yes, sir.
25          MR. WALKER:  You said that you had a civil suit and
```

```
1        it was as a result of an injury that you suffered.  Is
2        that injury something that carries on and it would
3        affect anything with you today?
4             MR. B_____:  From time to time I have trouble
5        with my back and with my arms going numb; but, I mean, I
6        work and stuff just fine.
7             MR. WALKER:  If you could -- well, if something
8        goes numb, if you could stand up to kind of stretch out
9        during the process of the trial, that would be okay?
10            MR. B_____:  Yes, sir.
11            MR. WALKER:  Okay.  So those are kind of the
12       general questions I wanted to ask based on what y'all
13       said.  Now I've got kind of a separate group of
14       questions I want to ask you about.
15            How many people lived in southwest Louisiana in
16       2005?  Okay.  So we've got a few who didn't and we've
17       got a lot who did.
18            Oh.  If you don't mind being stuck with the
19       microphone, you can stay with it.  Otherwise, you can
20       set it down.  It's up to you.
21            I assume everybody remembers when Hurricane Rita
22       hit southwest Louisiana.  And probably some of y'all
23       heard about, maybe all of y'all, heard about the Road
24       Home Program which was a program set up here in
25       Louisiana with money that came from Congress.  How many
```

1    people heard of the Road Home Program?  Okay.

2        How many people actually had their homes damaged or

3    destroyed in Hurricane Rita such that y'all had to

4    actually talk to the Road Home Program?  A few less.

5        THE COURT:  Hands are raised.

6        MR. WALKER:  For the people who raised their hands,

7    could y'all raise them back up one more time.  I can't

8    write it down so I have other people looking, and I know

9    the Defense is doing the same thing.

10        Were y'all satisfied with the way that process

11    worked?  Were y'all satisfied with the way the Road Home

12    Program worked?

13        THE COURT:  If you weren't, raise your hand,

14    please.

15        MR. WALKER:  You were not satisfied with how the

16    Road Home Program worked?

17        THE COURT:  That's Mr. D███.

18        MR. WALKER:  Judge, as it comes to those people,

19    there are going to be a few questions that probably I

20    would like to talk to the people outside the presence of

21    the other jury.  We can just do it at the sidebar after

22    I finish with all my other questions, if that's okay.

23        THE COURT:  No.

24        MR. WALKER:  No?  Okay.  Mr. D███, you were

25    unhappy with the way the Road Home Program worked.  Did

1      you live in Cameron Parish?

2           MR. D███: Yes.

3           THE COURT:  Microphone, please.

4           MR. WALKER:  Oh.  I'm sorry.

5           MR. D███:  Yes, sir.

6           MR. WALKER:  Did you live in the city of Cameron or

7      just Cameron Parish?

8           MR. D███:  I lived in Grand Lake off of Big

9      Pasture.

10          MR. WALKER:  Hang on one second.  Did you ever go

11     into Cameron, Louisiana?

12          MR. D███:  Excuse me?

13          THE COURT:  I didn't hear you.

14          MR. WALKER:  Did you ever go into Cameron,

15     Louisiana?  I know that's not very far from where you

16     live.

17          MR. D███:  Well, Cameron is -- believe it or not,

18     we live on an island on a pontoon bridge and Cameron is

19     quite a ways from us.  But we got hit with the biggest

20     part of it.  We weren't allowed to go to our house for

21     maybe about two months to go and actually look at our

22     house.

23          MR. WALKER:  I know a lot of people who were in

24     exactly the same boat.

25          THE COURT:  No pun intended.

```
1            MR. WALKER:  I know a lot of people were really
2    upset about the fact that they were not able to get back
3    to their houses very quickly.  Was that one of the
4    things you were upset about?
5            MR. D████:  Yes, sir.
6            MR. WALKER:  Were you upset with kind of how long
7    it took to get the money from the Road Home Program?
8            MR. D████:  We didn't receive no help during Rita
9    for Road Home or FEMA, nobody.
10           MR. WALKER:  You didn't receive help from anybody
11   from the Road Home Program or FEMA?
12           MR. D████:  No.  They told us at the time that, me
13   and my dad were working together as a team, apparently
14   we made too much money.
15           MR. WALKER:  And so it was only the people that
16   made less money who were able to get money through the
17   program?
18           MR. D████:  I really don't know that.  I think we
19   were just kind of thrown off completely because my boss,
20   who made $500,000 a year, he got money from the Road
21   Home Program and FEMA and we didn't.
22           MR. WALKER:  It would seem to me that that would be
23   something that really upset you.  Is that true?
24           MR. D████:  Yes, sir.
25           MR. WALKER:  You're going to be hearing from people
```

1    who are going to be talking a lot about the Road Home

2    Program and the way it worked.  Would the fact that you

3    felt like you got the short end of the stick on the Road

4    Home Program, is that something that you would hold

5    against the witnesses who are testifying?

6         MR. D█: No, sir.  As my statement said, I don't

7    judge anybody.  So holding judgment for that long would

8    be wrong of me.

9         MR. WALKER:  Okay.  It scares me when you say that,

10   and I heard exactly what you said to the judge.  You

11   said you were going to do the best you could.

12        MR. D█:  Yes, sir.

13        MR. WALKER:  And it's totally okay, I want to start

14   off with that, that you say you don't judge people.

15   Unfortunately, in a case like this, if you sit on the

16   jury, one of the things you're going to have to do is

17   you judge the case and you judge it and you make a

18   decision as to whether we proved our case beyond a

19   reasonable doubt.

20        MR. D█:  Let me rephrase what I meant by that.

21   I'm sorry.  I'm not very good with words.  I don't hold

22   grudges.  I guess that would be the way to put it.  I

23   understand that I'm in this jury to make a decision for

24   the well-being of all this.  That way everything's

25   judged properly.  But I don't hold no grudges against

 1     FEMA or Road Home or any kind of hatred towards anybody.
 2         MR. WALKER:  And I kind of moved on.  I understand
 3     exactly what you said, and I really appreciate that.  I
 4     also want to talk to you briefly about the fact that you
 5     said you don't judge other people.  Is that a religious
 6     belief that causes you not to judge or is that something
 7     that you just feel?
 8         MR. D███:  I am a really strict Catholic so I try
 9     not to judge people because it's just wrong to come up
10     to somebody and think wrong of them.
11         MR. WALKER:  Do you feel like if you were sitting
12     on this jury and -- let's say you're in the jury and
13     you're in the back, you've been picked, and you've
14     listened to the evidence.  Do you feel like it would be
15     more difficult for you to vote guilty or vote not guilty
16     because of the fact that you feel like, as a strict
17     Catholic, you can't judge people?
18         MR. D███:  I would definitely have to make sure
19     that I've looked over the evidence properly and make
20     sure that -- maybe say some prayers, make sure that I
21     feel confident with what I let out.
22         MR. WALKER:  Thank you.  Let's see.  And now I'm
23     going to go back -- I needed to talk to Mr. D███
24     briefly.  I appreciate your time.  I'm going to go back
25     and continue to talk to y'all about the Road Home

1      Program some.  So other than Mr. D████, was anybody

2      denied money from the Road Home Program?

3           THE COURT:  If so, please raise your hand.  No

4      hands are raised.

5           MR. WALKER:  As you probably know, the people who

6      applied for it, there were certain rules that you had to

7      follow in order to get money.  In other words, there

8      were certain things that you had to fit within in order

9      to get money.  You had to own a house.  It had to have

10     been destroyed.  It had to have been destroyed during

11     Rita or Katrina.  And there are a whole list of rules

12     that you're going to hear about.  Now, there's no doubt

13     that in Cameron Parish there was a lot of destruction.

14     Would anybody here -- I want you to raise your hand if

15     you say yes to this.  Would anybody hear say, "I don't

16     care whether the people owned a home.  If they lived in

17     Cameron Parish they've got to give them some money.  It

18     doesn't matter"?  Would anybody say that?

19          THE COURT:  No hands are raised.

20          MR. WALKER:  Thank you.  Just for clarity, other

21     than Mr. D████, did anybody live in Cameron Parish prior

22     to or during Hurricane Rita?

23          THE COURT:  If so, please raise your hand.  No

24     hands are raised.

25          MR. WALKER:  Thank you, Judge.  The last thing I

```
 1      want to do is read off the names of our witnesses.  Jeff
 2      Haley, he works for the Road Home Program.  Mike
 3      Gaskins, he works for a group that is connected to the
 4      Road Home Program.  Cynthia Hawkins.  James Lavergne.
 5      Sheriff Ron Johnson, he actually -- he's the sheriff of
 6      Cameron Parish -- I'm sorry, of Cameron Parish now.  He
 7      used to be the fire chief in the city of Cameron.  Tina
 8      Corbello, she's the tax assessor in the city of Cameron.
 9      Dianne and Malcolm Skipper.  Adley Dyson, Sr.  Stephen
10      Ashford.  Randy Hunt.  And Miles Hebert.  Yes?
11           MR. D____:  He is my neighbor.
12           THE COURT:  Which one is?
13           MR. D____:  Miles Hebert.
14           MR. WALKER:  Is he a person you know pretty well?
15           MR. D____:  Yes.  He helped pull me out of my yard
16      yesterday.
17           MR. WALKER:  So you know him pretty well.  Yes.
18      And if you could pass the microphone down.
19           And I believe you are Ms. -- is it H____?
20           MS. H____:  Yes.  I don't know Miles Hebert, but I
21      worked with his wife at the bank.
22           MR. WALKER:  The bank in -- which bank?
23           MS. H____:  Cameron State Bank.
24           MR. WALKER:  Cameron State Bank.  Okay.  Does she
25      work in Lake Charles or does she work in the city of
```

**Deidre D. Juranka, RPR**
**United States Court Reporter**
**Western District of Louisiana**

1    Cameron?

2        MS. H███:  Lake Charles.  She's not there anymore.

3    I'm not there anymore either.

4        MR. WALKER:  And I'm going to ask both of you --

5    well, first of all, I'll ask you since you have the

6    microphone.  The fact that you knew Miles' wife, did you

7    know Miles Hebert, too, or just his wife?

8        MS. H███:  Just his wife.

9        MR. WALKER:  Would the fact that she was his wife,

10    would that tend to make you give him more credence?

11    Would you tend to believe him more because of the fact

12    his wife's a nice lady, or not?

13        MS. H███:  No.

14        MR. WALKER:  If you could pass the microphone back

15    down to Mr. D███.

16        Mr. D███, I want to start and say I'm so sorry

17    because I know you don't like crowds.  Mr. Hebert, Miles

18    Hebert, you said he helped pull you out and he's your

19    neighbor.

20        MR. D███:  Yes.

21        MR. WALKER:  Is he a person, because you know him

22    and because he's been helpful to you and because he's

23    done these things for you, would you tend to believe him

24    more than other people just since you know him?

25        MR. D███:  Well, I've never known Mr. Hebert to

1    lie to me so it would probably be so.  Any time this man

2    told me something he was there, so.

3        MR. WALKER:  Thank you very much.  Could I have one

4    moment, Your Honor?

5        THE COURT:  Sure.

6        MR. WALKER:  The only other question I have:  Is

7    there any reason, as y'all sit here, that y'all can't

8    sit and listen to the evidence for the next two, maybe

9    two and a half days at the most?  Can everybody sit and

10   listen to the evidence in this case?

11       THE COURT:  If not, please raise your hand.  No

12   hands are raised.

13       MR. WALKER:  Thanks, Judge.  I was actually

14   confused.  Tina Corbello, actually, she works for

15   Jefferson Electric.  And so does that help?

16       Okay.  We didn't ask this question.  We talked

17   about Road Home and the fact that -- did anybody

18   actually receive money from the Road Home Program?

19       And the other question is did -- we talked about

20   how y'all --

21       THE COURT:  Did you get that Ms. G▓▓▓▓▓ and

22   Mr. H▓▓▓▓▓▓ raised their hands?

23       MR. WALKER:  We did, Your Honor.  And I think the

24   Defense did, too.

25       The other question I had:  Did anybody have any

```
1        friends or people they were close to or relatives who,
2        like Mr. D████, they had problems with the Road Home
3        Program such that y'all are now dissatisfied with the
4        program and y'all feel like it's a bad program?
5             THE COURT:  If so, please raise your hand.  No
6        hands are raised.
7             MR. WALKER:  Thank y'all very much.
8             THE COURT:  Ms. Gibbens?
9             MS. GIBBENS:  Thank you, Your Honor.  Very briefly
10       because, as Mr. Walker said to begin with, we had kind
11       of conferred with a joint mission on trying to figure
12       that out.  So I appreciate that, Mr. Walker.
13            And, Mr. D████, I just have one.  We are not
14       picking on you.
15            THE COURT:  Yes.  Yes, they are picking on you.
16            MS. GIBBENS:  You mentioned, you know, your
17       Catholicism and sitting in judgment.  But if Judge
18       Minaldi instructed the jury, which she will do, on the
19       law and told you what you had to do, what the rules
20       were, what the law meant, would you be able to go in the
21       back with the other jurors and apply the law as she's
22       asked you to?
23            MR. D████:  Yes, ma'am.
24            MS. GIBBENS:  Okay.  That was it.  I promise.
25            THE COURT:  I'm Catholic, too.  All right.
```

```
1         Anything else?  All right.  We'll take a 10 minute
2         recess.  I'd like to see the lawyers immediately in
3         chambers.
4                    IN-CAMERA PROCEEDINGS
5              THE COURT:  I'm going to offer to the Government
6         each time first.  So Ms. W        ?
7              MR. WALKER:  So we're actually -- can we have just
8         five minutes to talk.
9              THE COURT:  No.  Yeah.
10                   (Recess is taken.)
11             THE COURT:  Mr. Walker, Ms. W         ?
12             MR. WALKER:  We accept Ms. W        .
13             THE COURT:  Defense?
14             MS. GIBBENS:  We strike.
15             THE COURT:  Mr. D     ?
16             MR. WALKER:  We're moving for cause on Mr. D     .
17        It's not just that he said he's going to have to pray
18        before he decides to judge people, but it's also the
19        fact he's dyslexic and significantly dyslexic to the
20        point he can't drive a car.  He's also agoraphobic.  He
21        can't --
22             THE COURT:  Agoraphobic?
23             MR. WALKER:  I love the big words.  I had a rape
24        victim who was --
25             THE COURT:  He doesn't like crowds.  Who likes
```

1    crowds?

2         MR. WALKER:  But he also -- he's like -- this is a

3    document intense case and he really struggles to read.

4    I think that's significant.

5         THE COURT:  Denied.  Peremptory?  I think it's

6    perfectly fine for people to pray before they render a

7    verdict.

8         MR. WALKER:  We'll cut him.

9         THE COURT:  Peremptory.  Okay.  And Ms. S█████,

10   who we didn't hear from?

11        MR. WALKER:  We accept Ms. S█████.

12        MS. GIBBENS:  So do we.

13        THE COURT:  Juror number one.  Mr. B██████?

14        MR. WALKER:  We accept Mr. B█████.

15        MS. GIBBENS:  We strike Mr. B██████.

16        THE COURT:  I like Mr. B██████.

17        MS. GIBBENS:  We'll run out eventually.

18        THE COURT:  Ms. H████?

19        MR. WALKER:  We accept Ms. H█████.

20        MS. GIBBENS:  We strike her.

21        THE COURT:  Ms. T█████?

22        MR. WALKER:  Stricken by the Government.

23        THE COURT:  Ms. B█████?

24        MR. WALKER:  Heartily accept.

25        MS. GIBBENS:  We accept her.

```
1            THE COURT:  Juror number two.  Mr. W████████?
2            MR. WALKER:  Love the book.  Have to accept.
3            THE COURT:  What book?
4            MR. WALKER:  All the W████████ books, the English
5       books.  There was an author named -- that was his last
6       name.
7            MS. GIBBENS:  We strike him.  Sorry.  You can go
8       read him.
9            THE COURT:  That's Defense number four.
10      Ms. G████?
11           MR. WALKER:  We accept Ms. G████.
12           MS. GIBBENS:  So does the Defense.
13           THE COURT:  Mr. C██████?
14           MR. WALKER:  We strike Mr. C██████.  We strike
15      him.
16           THE COURT:  All right.  Government three.
17      Ms. F██████?
18           MR. WALKER:  We accept Ms. F██████.
19           MS. GIBBENS:  So do we.
20           THE COURT:  Juror number four.  And Mr. G████████.
21           MR. WALKER:  We accept Mr. G██████.
22           THE COURT:  Sounds like an evil person who eats
23      people.
24           MR. WALKER:  (Inaudible.)
25           MS. GIBBENS:  That's why we're going to strike him.
```

1        THE COURT:  I've watched too many TV shows.

2                (Off the record discussion.)

3        MR. WALKER:  L██████ we accept.

4        MS. GIBBENS:  We strike L██████.

5        MR. WALKER:  Mr. B██████████ we accept.

6        MS. GIBBENS:  We'll accept.

7        THE COURT:  That's juror number five.  And

8    Mr. C████████?

9        MR. WALKER:  We accept.

10       MS. GIBBENS:  We strike him.

11       THE COURT:  What's wrong with you?

12       MR. WALKER:  We don't any strikes for the second

13   panel.

14       THE COURT:  Okay.  So that's Defense seven.  And

15   Ms. E██████.

16       MR. WALKER:  We accept Ms. E██████.

17       MS. GIBBENS:  So do we.

18       THE COURT:  Yea.

19       MR. WALKER:  That's juror number six.

20       THE COURT:  She's six.  Mr. H████████?

21       MR. WALKER:  We strike Mr. H████████.

22       THE COURT:  I should have made you do this

23   contemporaneously.

24       MR. WALKER:  We had the paper.  We usually do it

25   that way.

```
1              (Off the record discussion.)
2         MR. WALKER:  And, also, Ms. G████ we're going
3    to strike because of similar problems.
4         THE COURT:  Because of possession of marijuana.
5    Really?  Who doesn't have that?  Government --
6         MR. WALKER:  That's five for me.  I have one left
7    and y'all have three left.  As of the second panel,
8    we'll definitely get a jury.
9         THE COURT:  I'm going to put 18 in the box again
10   just in case, just in case y'all get out of line again.
11                    COURT PROCEEDINGS
12        THE COURT:  I have some good news, some bad news,
13   and some not so bad news.  So I'm going to call out the
14   names of people who have been excused and you're free to
15   go and you will not have to appear again in this
16   building this week.  So that would be starting with
17   Ms. W██████, Mr. D████, Mr. B██████, Ms. H████,
18   Ms. T██████, Mr. W████████, Mr. C████████, Mr. G████████,
19   Mr. L██████.  Y'all keep track with me.  I got it wrong
20   last week.  I don't want to be wrong again.
21   Mr. C██████, Mr. H████████, and Ms. G████████.  Y'all
22   are free to go.  Thank you.
23        And now the rest of you, I know you know what this
24   means.  You have been chosen as jurors, and we have to
25   select some more jurors.  So there's no reason for you
```

1   to hang around here.  So I'm going to release you until

2   1:30.  Have a nice long lunch and come back at 1:30.

3   And we'll put 18 more people in the box.  Did I get it

4   right?

5       MS. GIBBENS:  Yes, Your Honor.

6       THE COURT:  I actually did have to stop somebody at

7   the front door last week.  I let them go and I shouldn't

8   have.

9       COURTROOM DEPUTY:  ███████████████████████████

10  ███████████████████████████████████████████████

11  █████████████████████████████████████████

12  ███████████████████████████████████████████████████

13  ████████████████████████████████████████████

14  ██████████████████████████████████████████.

15      THE COURT:  Thank you.  Was everyone able to hear

16  the questions that I asked of the first panel in the

17  box?  If not, please raise your hand.  No hands are

18  raised.

19      Is there anyone currently in this panel who thinks

20  that they could not judge this case based on the facts

21  and the evidence that you hear in court?  If so,

22  please -- if not, please raise your hand.  No hands are

23  raised.

24      I'm sure everyone knows at this point that this is

25  a criminal case and the Government, Mr. Walker and

1       friends, has the burden of proving this case beyond a

2       reasonable doubt.  Is there anyone who couldn't hold the

3       Government to that burden?  If so, please raise your

4       hand.  No hands are raised.

5           Anyone know any of the people introduced a little

6       bit earlier today?  If so, please raise your hand.  No

7       hands are raised.

8           Anyone know any of the witnesses whose names were

9       called out earlier this morning?  If so, please raise

10      your hand.  No hands are raised.

11          Mr. Walker.  Oh, you know, wait.  I'm sorry.  I

12      have some other things to ask.  It was premature.

13          Ms. Bowles, I've noticed something on your

14      questionnaire that I'm sure causes you some concern but,

15      as far as I know, that whole situation is over.  Is

16      there anything about that that would cause you a problem

17      sitting in judgment in this case?

18          MS. BOWLES:  No, ma'am.

19          THE COURT:  Thank you.  If you would pass right

20      next-door to Ms. L███.

21          Ms. L███, you indicated that you were summoned

22      for jury duty but did not serve; is that right?

23          MS. L███:  Yes, ma'am.

24          THE COURT:  Okay.  Anything about that that would

25      cause you any problem?

1          MS. L____:  No, ma'am.

2          THE COURT:  You also indicated that someone close

3     to you was involved in a lawsuit; is that right?

4          MS. L____:  Yes, ma'am.

5          THE COURT:  Anything about that that would cause

6     you a problem?

7          MS. L____:  No, ma'am.

8          THE COURT:  Thank you.  If you would pass two doors

9     down, always sounds like a band, to Ms. T____.

10         MS. T____:  Yes, ma'am.

11         THE COURT:  Ms. T____, you indicated that you've

12    been on a jury before.

13         MS. T____:  Yes, ma'am.

14         THE COURT:  Sounds like it was probably

15    interesting.

16         MS. T____:  Yes, ma'am, it was.

17         THE COURT:  Can you tell us a little bit about

18    that.

19         MS. T____:  The gentleman -- it was a murder

20    case and he was --

21         THE COURT:  Was he really a gentleman?

22         MS. T____:  Well, the man.  And he was claiming

23    insanity at the time.

24         THE COURT:  Was that in state court over here on

25    Pithon Street?

1          MS. T█████:  I think so.

2          THE COURT:  The new building, well, fairly new.

3          MS. T█████:  No.  It was parish court because it

4     was the D.A.

5          THE COURT:  Yeah.  Okay.  And did y'all -- you

6     indicated that he was found guilty.

7          MS. T█████:  Yes, ma'am.

8          THE COURT:  So he pleaded that he was incapable of

9     telling right from wrong because of a mental defect?

10         MS. T█████:  Yes, ma'am.

11         THE COURT:  But y'all didn't --

12         MS. T█████:  We found him guilty.

13         THE COURT:  You didn't buy that.  Spent a lot of

14    time over in that building.  Anything about that

15    experience that would cause you any trouble in this

16    case?

17         MS. T█████:  No, ma'am.

18         THE COURT:  Thank you.  If you'd pass right

19    next-door to Ms. V█████.

20         MS. V█████:  V█████.

21         THE COURT:  Am I pronouncing that right?

22         MS. V█████:  Yes, you are.

23         THE COURT:  All right.  You've had someone in your

24    family who was involved with law enforcement --

25         MS. V█████:  Yes.

```
 1          THE COURT:  -- and who is no longer with us; is
 2     that right?
 3          MS. V_____:  That's correct.
 4          THE COURT:  Anything about that experience that
 5     would cause you trouble in sitting on this jury?
 6          MS. V_____:  No, ma'am.
 7          THE COURT:  Thank you.  If you will pass on down to
 8     Mr. C_____.
 9          Mr. C_____, your family member is involved in a
10     lawsuit; is that right?
11          MR. C_____:  Yes, ma'am.
12          THE COURT:  At what point is that lawsuit?
13          MR. C_____:  I guess the beginning.  She hadn't
14     gone to court or anything.  The lawyers are talking back
15     and forth.
16          THE COURT:  Well, that could take forever.
17          MR. C_____:  Yes.
18          THE COURT:  Anything that will cause you -- I get
19     to make fun of lawyers now.  So much fun.  Anything that
20     will cause you any problem in sitting as a juror in this
21     case?
22          MR. C_____:  No, ma'am.
23          THE COURT:  If you would pass down to the next row,
24     Mr. L_____.  Is it L_____ or L_____?
25          MR. L_____:  Either way you want to say it.
```

1       THE COURT:  Mr. L█████, you -- I have some friends

2  who pronounce it L█████.  You have a family member who

3  has been involved with law enforcement before; is that

4  right?

5       MR. L█████:  That's correct.

6       THE COURT:  How long ago was that?

7       MR. L█████:  I'd say about 15 years ago.

8       THE COURT:  Good long time, then.  Anything about

9  that experience that would cause you any trouble in this

10  case?

11       MR. L█████:  No, ma'am.

12       THE COURT:  Thank you.  And if you could pass right

13  next-door to Mr. N█████.

14       Are you in the contractor N█████ family?

15       MR. N█████:  Air conditioning.

16       THE COURT:  Oh, okay.  Leave your card behind,

17  please.  All right.  You were called for jury duty, but

18  apparently the person pleaded guilty before you got to

19  deliberate; is that right?

20       MR. N█████:  Yes, ma'am.

21       THE COURT:  Did you actually get selected to be on

22  the jury?

23       MR. N█████:  We didn't make it to this process.

24       THE COURT:  Oh, okay.  Anything about that

25  experience that would cause you any problem here today?

```
 1          MR. N████:  No.
 2          THE COURT:  Thank you.
 3          MR. N████:  But I got one other little thing.
 4          THE COURT:  Do you need to talk with me outside the
 5    presence of other people?
 6          MR. N████:  (Nods head up and down.)
 7          THE COURT:  Let's take a little recess.  And staff
 8    and attorneys, please come into my chambers.  And,
 9    Mr. N████, if you would come, too.
10                  IN-CAMERA PROCEEDINGS
11          MR. N████:  (Enters chambers crying.)
12          THE COURT:  I'm so sorry.
13          MR. N████:  It's okay.
14          THE COURT:  Can we excuse Mr. N████?
15          MS. GIBBENS:  Yes.
16          MR. WALKER:  Yes.
17          MR. N████:  In the early '80's I fell off the
18    roof --
19          THE COURT:  You don't have to tell me.  We're good.
20          MR. N████:  -- you know, hair turned this color
21    and I can't -- you know, smell's gone, stuff like that.
22    If I talk long I forget the words, but I can work and do
23    all this other stuff.  My attention span, like, if you
24    talk to me for over five minutes --
25          THE COURT:  I understand.
```

```
 1            MR. N_____:  -- my brain goes like --
 2            THE COURT:  I'm like that and I didn't even fall
 3       off a roof.
 4            MR. N_____:  I was out of it for six months.  I
 5       didn't know who I was.
 6            THE COURT:  You know what, you don't even have to
 7       go back in the courtroom.
 8                    (Off the record discussion.)
 9                      COURT PROCEEDINGS
10            THE COURT:  You may proceed.
11            MR. WALKER:  Ms. V_____ -- if we could pass the
12       microphone.
13            THE COURT:  You need to speak up, Mr. Walker.
14            MR. WALKER:  Ms. V_____ --
15            MS. V_____:  Yes.
16            MR. WALKER:  -- I know that you asked to be excused
17       because you have a very long commute to get to the
18       courthouse.  Can you tell me where you live, not your
19       physical address but what city you live in.
20            MS. V_____:  I'm feeling a little guilty now
21       because I found out there's some people that live
22       further than I do.  I live in Oberlin on the other side
23       of the river.
24            MR. WALKER:  Know right where it is.  The only
25       thing I have is:  If you're picked to serve on this
```

1    jury, is the fact that you have to drive an hour to get

2    here going to be so distracting to you that you can't

3    focus on listening to the evidence?

4         MS. V▮▮▮▮:  No, sir.

5         MR. WALKER:  Thank you very much.  Mr. L▮▮▮,

6    let's pass it forward, the judge asked you a lot about

7    an individual that you knew that had gotten a DWI; and

8    you said it wouldn't effect you, and I appreciate that.

9    The question I have is:  Were you satisfied with the way

10   the law enforcement officers handled the case and the

11   way it was resolved?

12        MR. L▮▮▮:  Yes, sir, I was.  I was glad to see

13   that all the talking I did came to be a truth because I

14   knew he was going to get caught.

15        MR. WALKER:  That's excellent.  I ask this question

16   because it's not a question I normally ask; but a lot of

17   people have a long -- long-held belief as a result of

18   maybe their religion or as a result of maybe what their

19   mom and dad taught them that they just can't judge other

20   people and, as a result of that, if you feel that way,

21   you wouldn't be a good juror to be sitting on a case

22   where you have to judge.  Does anybody have a long-held

23   belief that they just can't judge that's so strong that

24   they feel like they just couldn't sit on this jury and

25   judge this case?

1          THE COURT:  If so, please raise your hand.  No

2     hands are raised.

3          MR. WALKER:  I'm going to try and start saying

4     that, but I always forget.

5          THE COURT:  That's what I'm here for.

6          MR. WALKER:  Appreciate it.

7          THE COURT:  That's why they pay me the big bucks.

8          MR. WALKER:  Were y'all able to hear the stuff that

9     I was -- like, for instance, I don't know how other

10    people were in the back.  Was everybody able to hear the

11    names of the witnesses I named out when I was calling

12    out names?  And nobody -- raise your hands.  Nobody knew

13    any of the witnesses that I named out; is that correct?

14    No hands are raised.

15         Now, I know that a lot of y'all are from this area.

16    Is that correct?  Raise your hands if you're from the

17    area around Lake Charles.

18         How many of you were in the area around Lake

19    Charles in 2005 when Hurricane Rita hit the coast?

20    Okay.  So we have a few people who were not, but most of

21    you were.

22         How many of you were at least aware of the fact

23    that there was this thing called the Road Home Program

24    where you could get money if your house was damaged or

25    destroyed?  Raise your hands.  Looks like just about

1    everybody.  I don't have my sheet.

2         MS. H_____:  I'm from Indiana.

3         MR. WALKER:  You're from Indiana.  There you go.

4    And could you just name off your juror name just so it

5    will be on the record.  Just state your name.

6         MS. H_____:  _____.

7         MR. WALKER:  When did you get to Louisiana?

8         MS. H_____:  We PCS'd here with the military

9    after hurricane season in 2005.

10        THE COURT:  What is PCS?

11        MS. H_____:  Permanent change of station.

12        MR. WALKER:  Thank you.  Just didn't know.  You

13   weren't raising your hand about any of that.

14        Did anybody apply for money with the Road Home

15   Program?

16        THE COURT:  If so, please raise your hand.

17        MR. WALKER:  Only one person raised their hand.

18        THE COURT:  That's Mr. L_____.

19        MR. WALKER:  Mr. L_____.  Did you actually receive

20   money from the Road Home Program?

21        MR. L_____:  Yes, I did.

22        MR. WALKER:  Were you satisfied -- you're never

23   going to be totally satisfied with the way the

24   Government works in terms of giving out money; but

25   removing that, were you generally satisfied with the way

1  the process worked and how the State did this?

2       MR. L[            ]:  Yes, sir, I was satisfied.

3       MR. WALKER:  Thank you.

4       Did anybody have friends who received money from

5  the Road Home Program?  So we have a few people.

6       Were y'all satisfied with -- or based on what your

7  friends said, were they satisfied generally with the way

8  the process worked or were any of them angry with the

9  way it worked?

10       PROSPECTIVE JUROR:  I would say no problem.

11       MR. WALKER:  Does everybody kind of agree that

12  there weren't any -- your friends didn't have any

13  problems that y'all were voicing to -- nobody --

14       THE COURT:  If your friends had problems, raise

15  your hand, please.  No hands are raised.

16       MR. WALKER:  Were any of you from Cameron Parish or

17  did any of you visit Cameron Parish on a regular basis?

18  We have one lady in the back.  Okay.  We got a few

19  people.  We have Mr. L[        ].  And I'm going to ask you

20  individually, probably have to get y'all to raise your

21  hands in just a second after I talk to Mr. L[        ].

22       Did you go down and visit Cameron Parish after the

23  hurricane hit in 2005?

24       MR. L[        ]:  Yeah, as close to immediately as

25  possible.  Had so much water we couldn't get in.  I was

**Deidre D. Juranka, RPR**
**United States Court Reporter**
**Western District of Louisiana**

1    the district operating manager for Center Point Energy.

2    We were going down to look at our facilities to make

3    sure we could stop the gas flow.

4         MR. WALKER:  Were you able to do that?  Were you

5    able to stop the gas flow?

6         MR. L█████:  Well, we wasn't because Gulf South

7    Pipeline crew cut it off for us.

8         MR. WALKER:  So that solved the problem.  Of

9    course -- let's just go down -- if we could go down --

10        THE COURT:  Ms. O█████ raised her hand.

11        MR. WALKER:  She did.  Thank you.  Keep going

12    straight down.  You're almost to Ms. O█████.

13       Did you have close -- you said you'd been to

14    Cameron Parish.  Did you go down to Cameron Parish

15    shortly after Hurricane Rita hit?

16        MS. O█████:  As soon as possible.  My niece has

17    a -- had a home out there right in Big Lake.

18        MR. WALKER:  Was it completely destroyed?

19        MS. O█████:  It was partially standing but it

20    was -- yes.

21        MR. WALKER:  Did she apply for Road Home money or

22    anything like that?

23        MS. O█████:  Yes, I believe she did.

24        MR. WALKER:  Do you know if she got Road Home

25    money?

```
 1            MS. O█████:  I think she did, yes.
 2            MR. WALKER:  If you could pass the microphone
 3      directly up --
 4            THE COURT:  To Ms. T██████.
 5            MR. WALKER:  -- to Ms. T██████ who is right next
 6      to Ms. V██████.
 7            And you said you've been to Cameron Parish.  Did
 8      you go down and visit Cameron Parish shortly after Rita
 9      hit?
10            MS. T█████:  Yes, sir.  I was living there at the
11      time when Rita hit.
12            MR. WALKER:  Did you have a house?
13            MS. T█████:  Yes, sir, my boyfriend did.
14            MR. WALKER:  Was his house completely wiped away?
15            MS. T█████:  No, it wasn't wiped away.  It was
16      flooded and marsh mud, all of it.
17            MR. WALKER:  Was he able to apply for Road Home
18      money?
19            MS. T█████:  I don't know if it was Road Home or
20      FEMA, but he did apply and got funds to fix the house.
21            MR. WALKER:  Sometimes people think of those two
22      things as interchangeable, FEMA and Road Home.  FEMA is
23      the federal organization and Road Home was the Louisiana
24      organization, and they were both giving money for people
25      to rebuild their house.
```

1           MS. T███████:  I'm not sure which one it was.

2           MR. WALKER:  This is a question that's -- I was

3     trying to think of a way to ask it and I'm not sure if I

4     asked it as well as I can, but I'll give it a shot.

5     Does anybody feel like that because Cameron Parish was

6     so devastated, even if a person wasn't entitled to money

7     from the Road Home Program, we should just give them

8     money anyway?

9           THE COURT:  If so, please raise your hand.  No

10    hands are raised.

11          UNIDENTIFIED JUROR:  Can you restate the question?

12          MR. WALKER:  It was a terrible question.  Okay.

13    I'm going to start and do it in pieces.  Cameron Parish

14    really got devastated, right.  Some people were entitled

15    to Road Home money.  Some people were not.  Let's say

16    you lived in a house in Cameron Parish but you didn't

17    own the house in Cameron Parish.  Okay.  So one of the

18    things you have to do to get Road Home money is you

19    actually have to own the home.  Let's say you're just

20    renting the home and you don't own it.  Would you say,

21    well, he didn't own the home so he's not entitled to

22    money; but, hey, Cameron Parish was so destroyed, let's

23    just give him some money anyway?

24          THE COURT:  Any questions?

25          MR. WALKER:  So the question -- I've made that a

1    big long thing.  Now here's the question.  Does anybody

2    feel like that because of the devastation they would say

3    even if a guy broke the rules, even if a guy wasn't

4    entitled to the money and he said some things that

5    weren't true to get it, you wouldn't care, just give him

6    the money even though they lied to get the money?

7         THE COURT:  Anybody think that's okay?  If so,

8    please raise your hand.  No hands are raised.

9         MR. WALKER:  Mr. D███ -- if you could just pass

10   the microphone up -- there is a person who is very close

11   to you that has some pending charges against him.  And I

12   don't know.  I have to ask you a couple of questions

13   about that person.  Are they -- did that person have

14   misdemeanor charges or are they felony charges?

15        MR. D████:  There's actually felony charges

16   pending in Beauregard Parish and also misdemeanor

17   charges in Cameron Parish.

18        MR. WALKER:  Is that person -- so does that person

19   have to go to court in the future because of those

20   pending charges?

21        MR. D████:  Yes.  Court date in Cameron is

22   actually February 11th.

23        MR. WALKER:  The fact -- can we very briefly

24   approach the sidebar, Your Honor, because I don't want

25   to make a mistake here?  Is that okay?

1          THE COURT:  Sure.

2               (Off the record discussion.)

3          THE COURT:  Mr. D████, I'm going to grant your

4     fondest wish and excuse you.  You can go home.  Leave

5     the microphone, please.  Don't take it with you.  Maybe

6     not your fondest wish.

7          MR. WALKER:  Close.

8          THE COURT:  Close, yeah.  Continue, please.

9          MR. WALKER:  Last question I can think of.  I have

10    one other.  Is that the Cajun Cup or is it Crescent City

11    Classic?

12          UNIDENTIFIED JUROR:  Cajun Cup.

13          MR. WALKER:  Still a runner?

14          UNIDENTIFIED JUROR:  Yeah.

15          THE COURT:  I ran the Crescent City Classic about

16    10 times.

17          MR. WALKER:  Me, too.

18          THE COURT:  Not anymore.

19          MR. WALKER:  Is there any reason why anybody else,

20    as y'all sit here, can't sit for the next two days, two

21    and a half days and listen to the evidence and consider

22    it and come back with a fair verdict?

23          THE COURT:  If so, please raise your hand.  No

24    hands are raised.

25          MR. WALKER:  Thanks, Judge.  That's all the

```
 1    questions I have.  Thank you very much.
 2         THE COURT:  Thank you, Mr. Walker.  Ms. Gibbens.
 3         MS. GIBBENS:  Thanks, Judge.  Your Honor, real
 4    quick.  Ms. B████, you were retired; but where are you
 5    retired from?
 6         MS. B████:  First Baptist Christian Academy in
 7    Moss Bluff as a teacher.
 8         MS. GIBBENS:  Okay.  Thank you.  Now, would anybody
 9    have a problem with at the conclusion of the trial when
10    the judge instructs you if her instruction is that the
11    burden is on the Government to prove the elements of
12    this case and Mr. Dyson doesn't have to prove anything
13    and he doesn't have to testify?  There are reasons
14    people don't testify that are related to their
15    attorneys, their intelligence level, those sorts of
16    things.  Would anybody have a problem with applying that
17    law as the judge would instruct you?
18         THE COURT:  If so, please raise your hand.  No
19    hands are raised.
20         MS. GIBBENS:  Can I have one moment?
21         THE COURT:  Sure.
22         MS. GIBBENS:  That's it.
23         THE COURT:  We're going to be at recess.  I'd like
24    to see the attorneys in about three minutes in my
25    conference room.  And you are free to go about the
```

1         world, just in this building.

2                      **IN-CAMERA PROCEEDINGS**

3             THE COURT:  Okay.  Defense has three.  Government

4      has one.  We have six jurors.  How about Ms. B████?

5             MR. WALKER:  We reluctantly accept Ms. B████.

6             MS. GIBBENS:  We're striking.

7             THE COURT:  That's defense.

8             MR. WALKER:  That's number eight.

9             MS. GIBBENS:  Eight.

10            THE COURT:  And Ms. L████?  I meant to do the

11     contemporaneous strikes.

12            MR. WALKER:  It doesn't matter.

13            THE COURT:  So much more fun that way.

14            MS. GIBBENS:  We're good.

15            THE COURT:  Okay.  L████?

16            MR. WALKER:  We're good.

17            MS. GIBBENS:  We're striking her.

18            THE COURT:  That's nine.  Mr. B████?

19            MR. WALKER:  I guess we'll have to take him.

20            MS. GIBBENS:  We're striking him.  We have one more

21     alternate, right?

22            THE COURT:  Yeah.

23            MR. WALKER:  We'll take the next six.

24            MS. GIBBENS:  We'll use our --

25            MR. WALKER:  You can't strike any of the next six.

1    You can't use your alternate strike to strike a
2    nonalternate juror.  So we're taking the next six jurors
3    and then we'll get to the alternates.  I'm sorry, Your
4    Honor.  Guess you could have said that.
5         THE COURT:  So that's seven --
6         MR. WALKER:  8, 9, 10, 11, 12.  You want to strike
7    M████?
8         THE COURT:  Mr. N████ is gone.
9         MS. GIBBENS:  Mr. N████ and Mr. D████.
10        THE COURT:  Yeah, M████ would be 12 if you
11   accepted him.
12        MR. WALKER:  Yes, we did.
13        THE COURT:  Okay.
14        MR. WALKER:  How many alternates?
15        THE COURT:  One.  So you each get a challenge, one
16   challenge for the alternate.  Mr. D████'s gone.
17   Ms. O████?
18        MR. WALKER:  I don't think she talked.  Oh.  She
19   went to Cameron after the storm.  I'm going to strike
20   Ms. O████.
21        THE COURT:  Okay.  How about Mr. D██████?
22        MS. GIBBENS:  We'll strike him and keep Ms. B████.
23        THE COURT:  Okay.  So Ms. B████'s the alternate.
24        MR. WALKER:  Uh-huh.
25        THE COURT:  Okay.  Let's go.

**COURT PROCEEDINGS**

1

2          THE COURT:  Once again, I have some good news, some

3     in between news, and some bad news.  We have a jury.  So

4     all of you who are still sitting out in the gallery are

5     free to go forever.  You do not have to come back this

6     week.  Thank you very much.  Don't think it was a waste

7     of time because without you being here we couldn't have

8     gone through this process.  So I thank you for your

9     service.

10          And now, it's going to be easier if I say who needs

11    to stay than who gets to go.  So, Ms. T████, you need

12    to stay.  Ms. V████, you need to stay, please.

13    Mr. F████, you need to stay.  Mr. C████, please

14    stay.  Mr. L████, please stay.  And, Mr. M████,

15    please stay.  And, Ms. B████, please stay.  The rest of

16    you -- did I get that right?

17          MR. WALKER:  You did, Your Honor.

18          THE COURT:  Okay.  The rest of you are free to go.

19    As I told the other people who were in here, we couldn't

20    have done this without your presence.  So I thank you

21    very much.  And the rest of you need to come back -- I

22    excused the other jurors until 1:30 because I didn't

23    know how fast this was going to go.  So you are excused

24    until 1:30.  And when you come back Ms. Benoit here is

25    going to tell you which seats you need to take when you

**Deidre D. Juranka, RPR**
**United States Court Reporter**
**Western District of Louisiana**

1     come back.

2          Is there anything further that we need to do before

3     lunch?

4          MR. WALKER:  Nothing, Your Honor.  Thank you very

5     much.

6          MS. GIBBENS:  No, Your Honor.

7          THE COURT:  Thank you.  Have a nice lunch.

8

9

10                      * * * * * * *

11

12

13                        **CERTIFICATE**

14

15      I hereby certify this 4th day of February, 2016, that

16   the foregoing is, to the best of my ability and

17   understanding, a true and correct transcript of the

18   proceedings in the above-entitled matter.

19

20                              S/Deidre D. Juranka, RPR
21                              Official Court Reporter

22

23

24

25

**Deidre D. Juranka, RPR**
**United States Court Reporter**
**Western District of Louisiana**