UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | NO. 15-CR-00012-01 |
| | * | |
| VERSUS | * | JUDGE DONALD E. WALTER |
| | * | |
| ADLEY LEO DYSON, JR. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION FOR ACCESS**
**TO SEALED AND UN-DOCKETED INFORMATION**

The Associated Press ("AP") respectfully submits this memorandum in support of its motion for access to sealed and un-docketed information. For the reasons stated, this Honorable Court should enter an order requiring that all documents and transcripts of proceedings currently under seal in this case be unsealed and that any and all filings or other events in this case be publicly docketed on PACER and made available for the public's inspection.

## INTRODUCTION

This case involved the alleged misuse of the Louisiana Road Home Program, a federal program established to provide monetary assistance to residents whose homes were damaged in Hurricane Katrina and Rita. The Government accused Defendant Adley Leo Dyson, Jr. of submitting false applications for the purpose of obtaining more than a hundred thousand dollars in Louisiana Road Home Program funds to which he was not entitled. R. Doc. 1.

A jury trial commenced on February 1, 2016, Judge Patricia Minaldi presiding, but never concluded. On the morning of the second day of trial, Judge Minaldi interrupted the

Government's presentation of its evidence and called counsel to her chambers. R. Doc. 39 at p.54 ("THE COURT: In chambers."). After a short recess, counsel returned to the courtroom and trial resumed. But only a few minutes later, Judge Minaldi interrupted again, this time with the admonition: "Get your act together. Okay. I have no idea what's going on here. Get your act together." R. Doc. 39 at p.55. She ordered a recess for lunch, with the instruction "We'll come back at 12:00." The trial never resumed. R. Doc. 39 at p.55 ("Recess is taken. Court was not resumed.").

Shortly thereafter the case was reassigned to a different judge. R. Doc. 28. After reassignment, the parties apparently jointly moved for mistrial, and the motion was granted "for the reasons enunciated on the record on February 3, 2016." R. Doc. 29. Dyson later entered a plea of guilty to knowingly and willfully making a false statement in violation of 18 U.S.C. § 1001, R. Doc. 50, and was sentenced to probation for a term of three years, R. Doc. 60.

There are several important public interests at stake in this case: The public has a general interest in the administration of criminal judicial proceedings, in the administration of public programs, and in the mishandling of public funds. Here, the local public has a special interest in the misuse of a federal program established for its benefit.

The public not only has important interests in this case, it has a constitutional right to know what has transpired in this case. The public's right of access to criminal judicial proceedings is well-established and includes not merely the right to attend live proceedings but to inspect documents filed in the court's record.

Those interests and rights notwithstanding, portions of this case have been conducted outside the public's view. Not only was an apparently critical part of the trial proceeding conducted in Judge Minaldi's chambers, behind closed doors, but documents and transcripts of

proceedings were filed under seal, without requisite on-the-record findings that confidentiality was in fact warranted. In some instances, sealed filings were never even docketed therefore the public never knew they existed; for example, there are no docket entries on PACER for what should be record documents number 6, 7, 30, 56, and 58. Indeed, the Court's own orders indicate at least one official transcript remains invisible to the public. *Compare* R. Doc. 40, Order ("the official transcripts [Docs. ## 30, 37, 38, and 39] … shall be UNSEALED") *with* R. Doc. 41, Amended Order ("the official transcripts [Docs. ## 37, 38, and 39] … shall be UNSEALED").

The AP shows below: (1) the public has a right of access to the Court's proceedings; (2) the public has a right of access to the Court's filings, including any documents and transcripts of proceedings currently under seal; and (3) the public's right of access requires that the Court publicly docket all events and filings in this case.

## ARGUMENT

### I. The public has a right of access to the Court's proceedings.

The First Amendment to the United States Constitution guarantees the public's right of access to criminal judicial proceedings. *See, e.g., Press-Enterprise Co. v. Superior Court* (*Press-Enterprise II*), 478 U.S. 1, 16 (1986); *Press-Enterprise Co. v. Superior Court (Press-Enterprise I)*, 464 U.S. 501 (1984); *Globe Newspaper Co. v. Superior Court for the County of Norfolk*, 457 U.S. 596 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). "[W]hat transpires in the courtroom is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947).

The right is not limited to trials; it applies to pre-trial and post-trial courtroom proceedings. *See, e.g., In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 182 (5th Cir. 2011), as revised (June 9, 2011) (public had right of access to closed sentencing proceeding); *U.S. v.*



1145182v.1

*Simone*, 14 F.3d 833, 840 (3rd Cir. 1994) (public had right of access to post-trial examinations of jurors for potential misconduct); *U.S. v. Gonzalez*, 927 F.Supp. 768 (D. Del. 1996) (public had right of access to documents submitted with motion for new trial concerning alleged evidence tampering by the FBI); *State v. Knox*, 464 N.W.2d 445, 447 (Iowa 1990) (public had right of access to closed portion of hearing on post-trial motion during which defendant attempted to prove, through witness testimony, that the jury foreman was a member of a racist terrorist organization); *Sentinel Star Co. v. Edwards*, 387 So. 2d 367 (Fla. Dist. Ct. App. 1980) (public had right of access to closed portion of hearing on post-trial motion in which defendant alleged juror misconduct entitled him to a new trial); *United States v. Feeney*, 501 F. Supp. 1324, 1328 (D. Colo. 1980) ("The public has an all encompassing interest in knowing the facts fed to a judge upon which he bases a sentencing decision.").

The right of access has many underlying rationales: It enhances the quality and safeguards the integrity of the fact-finding process, *see Globe Newspaper*, 457 U.S. at 606; *Richmond Newspapers*, 448 U.S. at 569; assures the appearance of fairness, *see Press-Enterprise I*, 464 U.S. 501; *Globe Newspaper*, 457 U.S. at 606; *Richmond Newspapers*, 448 U.S. at 569-70; functions as a check on the judicial and governmental process, *see Globe Newspaper*, 457 U.S. at 606; *Richmond Newspapers*, 448 U.S. at 569; and plays a cathartic role in permitting the community to observe justice being done, *Press-Enterprise I*, 464 U.S. 501; *Richmond Newspapers*, 448 U.S. at 570-72.[1]

---

[1] *See also* Daniel A. Farber, *Free Speech Without Romance: Public Choice and the First Amendment*, 105 HARV. L. REV. 554, 556-57 (1991) (describing information as a public good, and noting that "[t]he First Amendment is based on the belief that people will make better decisions if they are more fully informed."); Richard A. Posner, *Pragmatism Versus Purposivism in First Amendment Analysis*, 54 STAN. L. REV. 737, 743 (2002) (noting that "a democratic political system ... cannot prosper without freedom of inquiry").

In light of these important interests, the presumption of public access is strong and may be overcome only if "countervailing interests heavily outweigh the public interests in access." *See, e.g., Rushford v. New Yorker Magazine Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (*citing Press-Enterprise I*, 464 U.S. at 510). A court must determine that closure is "strictly and inescapably necessary," based on findings clearly articulated on the record. *See, e.g., United States v. Antar*, 38 F.3d 1348, 1361-63 (3d Cir. 1994); *The Associated Press v. United States District Court*, 705 F.2d 1143, 1145-46 (9th Cir. 1983); *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987).

Moreover, a court must provide the press and public with adequate notice and hearing *before* public access to criminal judicial proceedings may be restricted. *In re Hearst Newspapers*, 641 F.3d at 182 (citing *United States v. Criden*, 675 F.2d 550, 559 (3d Cir. 1982) ("The press should not be expected to 'camp out' in the hallway in order to ascertain whether evidentiary proceedings are being conducted in chambers.")). The Fifth Circuit has instructed that "these requirements are 'not mere punctilios, to be observed when convenient.' " *Id.* (citing *Phoenix Newspapers, Inc. v. U.S. Dist. Ct.*, 156 F.3d 940, 951 (9th Cir. 1998)). "The trial court cannot properly weigh the First Amendment right of access against the interests served by closure, nor can it fully consider alternatives to closure, without providing notice and an opportunity to be heard to the press and public." *Id.*

**II. The public has a right of access to the Court's filings, including any documents and transcripts of proceedings currently under seal.**

In addition to the constitutional right of access, there is also a well-established common law right of access to criminal judicial proceedings that includes the right to inspect and copy judicial records, exhibits, and other evidence. *See, e.g., Nixon v. Warner Communications, Inc.*,

435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."). *See also SEC v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993) (outlining the presumption of access to court records); *Leucadia, Inc. v. Applied Extrusions Technologies, Inc.*, 988 F.2d 157, 161-65 (3rd Cir. 1993) (recognizing "a pervasive common law right to inspect and copy … judicial records and documents"); *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423 (5th Cir. 1981) (recognizing the public's right of access to judicial records). The right is not limited to trials; it applies to pre-trial and post-trial submissions and materials. *See, e.g., United States v. Gonzalez*, 927 F. Supp. 768, 784 (D. Del. 1996) (public had right of access to sealed documents that formed the basis for defendant's motion for new trial). Like the constitutional right of access to criminal judicial proceedings, the common law right of access to judicial records safeguards the integrity and quality of, and respect for, the judicial system, by enabling the public to keep a watchful eye on the workings of the courts. *See, e.g., Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004); *In re Gitto Global Corp.*, 422 F.3d 1 (1st Cir. 2005).

"Certainly, in a case in which public attention is quite high, a court deliberating about whether to restrict broadly public access to materials submitted in connection with criminal proceedings ordinarily ought to afford interested parties an opportunity to be heard on the question of impoundment." *In re Providence Journal Co.*, Inc., 293 F.3d 1, 13 (1st Cir. 2002) (citing *United States v. Antar*, 38 F.3d 1348, 1361 n. 18 (3d Cir.1994)). "[I]f a court contemplates sealing a document or transcript, it must provide sufficient notice to the public and press to afford them the opportunity to object or offer alternatives. If objections are made, a hearing on the objections must be held as soon as possible." *Phoenix Newspapers*, 156 F.3d at 949. The interest must be "overriding." *Richmond Newspapers*, 448 U.S. at 581 ("an overriding

interest articulated in the findings”). Each sealed document requires an independent determination, based on particularized findings, that: (i) the interest sought to be protected will likely be prejudiced absent sealing; (ii) alternatives to sealing cannot adequately protect the interest; and (iii) sealing will probably be effective in protecting against the perceived danger. *See United States v. Chagra*, 701 F.2d 354, 364-65 (5th Cir. 1983); *see also Associated Press*, 705 F.2d at 1147; *United States v. Ladd*, 162 F.3d 503, 505-07 (7th Cir. 1998).

In contravention of the foregoing, portions of this case were conducted outside the public’s view, including proceedings related to the joint motion for mistrial. Absent the required showing—which has not been made here—the AP, and the public, is entitled to access to these proceedings, including all pleadings filed into the record, and transcripts of all proceedings held in the case.

**III. The public’s right of access requires that the Court publicly docket all events and filings in this case.**

Docket sheets serve as an index to judicial proceedings and documents and provide the public with the information it needs in order to exercise rights guaranteed by the First Amendment. A docketing system that omits events or filings from a docket sheet effectively deprives the public and the press of the ability to meaningfully exercise a right of access; such a docketing system is, by itself, “an unconstitutional infringement on the public and press’s qualified [First Amendment] right of access to criminal proceedings.” *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir.), *cert. denied sub nom.*, *Times Publishing Co. v. U.S. District Court for the Middle District of Fla.*, 510 U.S. 907 (1993). *See also CBS, Inc. v. U.S. District Court for the Central District of Cal.*, 765 F.2d 823, 826 (9th Cir. 1985) (“a two-tier system, open and closed, erodes public confidence in the accuracy of records, and thus undermines the press’s and

public's right to meaningful access"). The public's right of access thus requires that the Court publicly docket all events and filings in this case, now and in the future.

## CONCLUSION

For all of the foregoing reasons, this Honorable Court should enter an order requiring that all documents and transcripts of proceedings currently under seal in this case be unsealed and that any and all filings or other events in this case be publicly docketed on PACER and made available for the public's inspection.

Respectfully submitted,

*/s/ Alysson L. Mills*

Loretta G. Mince, # 25796
Alysson L. Mills, # 32904
FISHMAN HAYGOOD, L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
lmince@fishmanhaygood.com
amills@fishmanhaygood.com

*Attorneys for The Associated Press*

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2016, I filed the foregoing with the Clerk of Court using the electronic case filing system, which served notice on all counsel of record.

*/s/ Alysson L. Mills*

Alysson L. Mills, # 32904